NICHOLS v. TODD et al.—101 S. W. (2d) 486.

Middle Section. October 10, 1936.

Petition for Certiorari denied by Supreme Court, February 13, 1937.

Walter Hancock and Walter L. McCrary, both of Woodbury, for appellants.

C. L. Cummings, of Murfreesboro, for appellee.

FAW, P. J. Mrs. Matilda Todd, late a resident citizen of Cannon county, Tenn., died testate in that county on June 20, 1934, and her last will and testament, which was duly and regularly probated in the county court of Cannon county on June 24, 1934, reads as follows:

"Woodbury Tennessee

"May 21, 1934

"The following is my will, at my death I want my husband S. A. Todd to have all my property, both real estate and personal as long as he lives.

"Matilda Todd

"Witness:

"Tommie Bogle

"Ina Mitchell

"T. L. Denny."

The issue presented by the pleadings, and the main question presented by the assignments of error in this court, is with respect to the proper construction of the aforesaid will of Mrs. Matilda Todd.

It is insisted for S. A. Todd, the surviving husband of the testatrix, that, by the terms of said will, he took title to all of the property of the testatrix, both personal and real, absolutely and in fee simple; and the chancellor so held and decreed.

The persons who would take title, as heirs at law and distributees, to any property of the testatrix as to which she died intestate, were made parties to this suit, and they insisted below, and, having appealed from the chancellor's decree, they are insisting here, that under said will of Matilda Todd said S. A. Todd took merely an estate for the term of his natural life in the property of the testatrix, and that the said Matilda Todd died intestate as to the estate in remainder thereof.

The testatrix never had any children, and her aforementioned heirs at law and distributees are four brothers, one sister and some children of two deceased brothers and a deceased sister, respectively.

The learned chancellor filed a written "finding of facts" in which, after setting out the death of Mrs. Matilda Todd and a copy of her will as hereinbefore set forth, he stated the facts found by him as follows:

"The deceased, Matilda Todd and S. A. Todd married about 15 years ago. No children were born as a result of their marriage and union. Besides her husband, deceased is survived by certain collateral kindred, who are correctly set out and stated in the pleadings, the names of some of whom are unknown and are nonresidents.

"The Court finds that the deceased and her husband, S. A. Todd, were throughout their married life on friendly terms, she making him a dutiful wife and he making her a good husband. They got along well so far as the record shows.

"The Court further finds that the deceased and her collateral kindred were on the best of terms and their relationships were friendly. Some of deceased's collateral kindred have been for a number of years, residents of the West and some of whom the deceased had never seen and the names of some she did not know.

"However, deceased received letters during her lifetime from some of her kinfolks in the West and had the pictures of some of them which she kept at her home.

"Deceased's brothers and sisters living in the community visited her often prior to her death. Deceased had been married once before she married S. A. Todd. S. A. Todd had also been married before their marriage. S. A. Todd had little or no property at the time he married deceased.

"At the time of the marriage of deceased and S. A. Todd, deceased owned the farm described in the original bill in this case, same being a good farm of about 135 acres in Cannon County, Tenn. She had other personal property consisting of cattle, hogs, household and kitchen furniture and utensils, farm tools, etc.

"Deceased held certain notes of her brothers and sisters which she turned over to them before she died, except that of Tom Ready.

"Deceased owned the farm at the time of her death which was worth about $5000.00. She also had stock and other personal property of over $1000.00 in value.

"At the time of the marriage of the deceased and S. A. Todd, deceased had considerable more property than she did at the time of her death; that is prior to her death certain investments in bank stock had been lost and some $1000.00, in Government stamps had been exhausted.

"The Court further finds that at this time the financial condition of the brothers and sisters of deceased is not good.

"The Clerk & Master will file the foregoing as a part of the record in this case and the same will be made a part of the decree as much

as if set out and copied therein and the Court will consider applications for additional finding of facts made by either party to the cause, when and if timely made.

"This December 7th, 1935, at Livingston, Tenn.

"A. F. Officer, Chancellor."

This case was, by agreement, tried before the chancellor upon the oral testimony of witnesses heard in open court, and the evidence thus heard was preserved by bill of exceptions.

There was no application for additional findings of facts below, and there is no error assigned in this court upon the chancellor's finding of facts. However, in view of the Code provision (section 10620) that this court "shall not be limited to the consideration of such facts as were found or requested in the lower court, but it shall independently consider and find all material facts in the record," we have examined the evidence in the bill of exceptions and we think that the material facts are fairly summarized in the chancellor's findings above quoted, except that the chancellor makes no mention of certain testimony of the witness J. J. Nichols as follows:

"I am the Administrator of the estate of Mrs. Matilda Todd. I wrote her will. I had not even written a will before and told her and Mr. Todd that I had not and would rather not try to write it. That I had never seen a will written. They worded the will and I wrote it out in my own way like they said."

The witness Nichols made some additional statements which, on objection, were excluded by the chancellor, and which will be stated when we come to the consideration of appellants' second assignment of error through which they complain of such exclusion.

In his final decree, the chancellor found, adjudged, and decreed as follows:

"That Matilda Todd died testate at her home in Cannon County, Tennessee, on the 20th day of June, 1934, that her last will and testament was duly probated in the County Court of said County and that a true and perfect copy thereof is set out and copied in the original bill.

"The Court finds and is of the opinion that it was the intention of the testatrix, by her said last will and testament, to give, bequeath and devise, not a life-estate merely, but an absolute estate in all the property of the testatrix, both real and personal, to the defendant, her husband, S. A. Todd.

"The Court, therefore, adjudges and decrees that by the terms of the said last will and testament of the said Matilda Todd the title to all of her property, both real and personal, is bequeathed, devised and vested absolutely and in fee simple in the defendant, the said S. A. Todd.

"The cost of the cause will be paid by J. J. Nichols, Administrator, out of the estate of Matilda Todd, including a fee of $100.000 to Walter L. McCrary, guardian ad litem for the unknown heirs of Mahala Keaton, deceased, and a fee of $500.00 to Cummings & Melton, solicitors for J. J. Nichols, Administrator."

Through their first assignment of error, the appellants challenge as erroneous the chancellor's finding and opinion that "it was the intention of the testatrix, by her said last will and testament, to give, bequeath and devise, not a life estate merely, but an absolute estate in all the property of the testatrix, both real and personal, to the defendant, her husband S. A. Todd," and the chancellor's adjudication and decree that "by the terms of the said last will and testament of the said Matilda Todd the title to all of her property, both real and personal, is bequeathed, devised and vested absolutely and in fee simple in the defendant, the said S. A. Todd."

It is the contention of the appellants that the words of the will in question disclose an intent on the part of the testatrix to devise and bequeath to her husband, S. A. Todd, a life estate only, and that the extrinsic evidence of the situation and surroundings of the testatrix and her property, and her relations with her brothers and sisters and their children, is in harmony with such construction of the language of the will.

In support of the chancellor's decree, counsel for appellee cites three sections of the Code of 1932, as follows below:

"7597. The term 'heirs,' or other words of inheritance, shall not be requisite to create or convey an estate in fee; and every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument."

"8091. Every devise shall convey the entire estate of the testator in the land, unless the contrary intent plainly appear from the words and context of the will."

"8133. A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator; and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context."

Neither section 7597 nor section 8133, supra, have any bearing upon the controversy presented on this record with respect to the construction of the will here in question.

The purpose of section 7597 was to abolish the common-law rule requiring words of inheritance as an indispensable prerequisite to the creation of an absolute estate in fee simple. See numerous cases stated and digested under that section in Williams' Annotated

Code, and also under the corresponding section (3672) in Shannon's Annotated Code.

It is not claimed that the absence of words of inheritance from the will of Mrs. Matilda Todd is of any imporance; hence section 7597 need not be further considered. Section 8133, supra, was enacted to alter the unyielding common-law rule that a will of real estate spoke as of the time of *its execution,* and real property acquired by the testator after the execution of the will could not pass thereby. See Annotation, 75 A. L. R., page 484 et seq. This was for the reason that, by the common law, "a devise of realty was in the nature of a conveyance by deed, and only operated on lands of which the testator was seized when he made his will." Reeves v. Reeves, 5 Lea, 644, 655. See, also, Wynne v. Wynne, 23 Miss., 251, 57 Am. Dec. 139.

In Tennessee, this common-law rule was modified by the Act of 1842, chapter 169, the fourth section of which act was as follows:

"That any estate, right, or interest in lands acquired by a testator, after making of his will, and of which he died seized or possessed as aforesaid, shall pass thereby in like manner as if owned by him at the making of the will, if such clearly appear by the will to have been the testator's intention." See Wynne's Lessee v. Wynne, 2 Swan, 405, 407, 58 Am. Dec., 66.

Later, the common-law rule was abrogated by the second section of the Act of 1851-52, chapter 180, which was carried into the Code of 1858 as section 2195; Shan. Code as section 3927, and the Code of 1932 as section 8133, above quoted.

Section 8091, supra, providing that "Every devise shall convey the entire estate of the testator in the lands, unless the contrary intent plainly appear from the words and context of the will," is, we think, directly applicable to the present controversy. The word "estate" is used in section 8091 in its technical sense as having reference to the nature of the testator's interest in the property, that is, as to whether it was a fee-simple or a lesser estate, and not with reference to the extent of the testator's ownership of the corpus, that is, as to whether he owned the whole property or merely an undivided interest therein. Thurston v. University of North Carolina, 4 Lea, 513, 518; King v. Miller, 11 Lea, 633, 634.

Applying section 8091 to the present controversy, it results that S. A. Todd took the "entire estate" of the testatrix in her real property, unless the words "as long as he lives" plainly manifest an intention of the testatrix to limit his devise to a life estate.

It is a general rule (which appellee S. A. Todd seeks to invoke) that there is a presumption that a testator intended to dispose of his entire estate, and not to die intestate, either as to the whole or any part thereof, or interest therein. Green v. Young, 163 Tenn., 16, 19, 40 S. W. (2d), 793.

██ But the presumption last mentioned above must *yield* when it conflicts with the general rule that an heir is not to be disinherited except by express words or necessary implication. McDonald v. Ledford, 140 Tenn., 471, 479, 205 S. W., 312; 28 R. C. L., pp. 229, 230, par. 190; 1 Jarman on Wills, 465.

██ A testator can disinherit his heirs only by giving his property to others, and real property not devised will pass to the heir under the laws of descent. Bradford v. Leake, 124 Tenn., 312, 137 S. W., 96, Ann. Cas., 1912D, 1140.

██ All of the rules we have stated hereinabove are subject to the cardinal rule that the intention of the testator must prevail, so far as it is possible to give it effect without contravening some fixed rule of law; but the testator's intention must be ascertained from "that which he has written" in the will, and not from what he "may be supposed to have intended to do," and extrinsic evidence of the condition, situation and surroundings of the testator himself may be considered only as aids in the interpretation of the language used by the testator, and "the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the langauge of the writing itself." Sizer's Pritchard on Wills (2 Ed.), secs. 384, 387, 388, and 409.

██ With reference to the will of Matilda Todd: We must assume that the testatrix intended that the words "as long as he lives," as used in her will, should have some meaning and effect, and we think that they plainly manifest an intent that the estate devised to S. A. Todd should be limited to his lifetime. We are unable to attribute any other reasonable meaning to these words.

And, in the light of the facts of her situation and surroundings, as disclosed by the proof, we think this was an altogether reasonable and natural disposition for Mrs. Todd to make of her property. She had a natural and proper solicitude for her husband's maintenance and comfort as long as he might live, but the record contains no evidence, and discloses not even a suggestion, that her husband had any relatives that she would prefer to her own brothers and sisters and their children in the matter of the descent and distribution of her estate after her husband's death.

In the text of 69 C. J., pp. 531, 532, sec. 1609, it is said:

"A devise for or during the devisee's life or lifetime or *as long* *as he live*, or until his death, or in such similar phrase, creates a life estate in the devisee, unless other parts of the will show another intention." (The italics are ours.)

We think that the opinions in Green v. Young, 163 Tenn., 16, 40 S. W. (2d), 793, and Williams v. Williams, 167 Tenn., 26, 65 S. W.

(2d), 561, recognize approvingly the rules of construction we have followed in this opinion, and that the facts of those cases are not parallel with the facts of the record now before us; hence they are not controlling precedents in support of the decree of the chancery court in the instant case.

For the reasons stated, the appellants' first assignment of error is sustained.

The appellants' second assignment is that the chancellor erred in excluding the testimony of J. J. Nichols, the draftsman of the will, as follows:

"I am the administrator of the estate of Mrs. Matilda Todd. I wrote her will. I had not ever written a will before, and told her and Mr. Todd that I had not, and would rather not try to write it. That I had never seen a will written. They worded the will and I wrote it out in my own way like they said. Mrs. Todd told me that she wanted her husband to be cared for as long as he lived."

We think all of the above-mentioned testimony of J. J. Nichols was competent except the last sentence, viz.: "Mrs. Todd told me that she wanted her husband to be cared for as long as he lived;" and the second assignment of error is sustained as to the exclusion of the testimony quoted therein, except the last sentence thereof as above pointed out, and we have treated Nichols' testimony (with the exception stated) as a part of the record for our consideration.

In view of the rules set forth in Sizer's Pritchard on Wills (2 Ed.), secs. 384, 387, 388, 400-403, 409, some of which we have hereinbefore summarized, we do not think the chancellor erred in excluding the statement of Nichols that Mrs. Todd told him that she wanted her husband to be cared for as long as he lived, and the second assignment of error is overruled insofar as it relates to the exclusion of the last mentioned statement of the witness Nichols.

The testimony of J. J. Nichols to the effect that he was without experience in drafting wills, although competent evidence, is of no particular importance in the record, for the reason that this is merely the statement of a fact which might have been inferred (to a large degree at least) from the will itself.

Through their third assignment of error appellants complain of the failure of the chancellor to direct that the personalty of Mrs. Todd's estate be converted into cash and preserved for the remainder-men.

Holding, as he did, that S. A. Todd took the entire estate of the testatrix absolutely and in fee simple, the learned chancellor. of course, made no decree with reference to the matters mentioned in the third assignment of error, and there is therefore nothing for us to review on that subject.

If it were otherwise competent for this court to make a decree upon the matters embraced in the third assignment of error, the proof in the record before us is not sufficient to afford a proper basis for a decree on that subject. The bill was filed by the administrator (with the will annexed) of the estate of Mrs. Matilda Todd, deceased, for a construction of the will and for instructions from the court with respect to the administration of his trust under the will, and it will, therefore, be necessary to remand the case to the chancery court. On the remand, the chancellor may, upon ascertainment of the facts by reference and proof or other legal method, make such orders and decrees as may be necessary and proper to adjust the respective rights of the life tenant and the remaindermen in and to the personalty of the estate of complainant's testatrix in accordance with the applicable rules of law, some of which may be found in Sizer's Pritchard on Wills (2 Ed.), secs. 427, 428; Bynum v. McDowell, 3 Tenn. App., 340, 359; Case Note, 16 L. R. A. (N. S.), pages 483 et seq.

It results that the decree of the chancery court is reversed insofar as it is thereby adjudged and decreed that the title to the real estate of the testatrix, Mrs. Matilda Todd, and the personalty of said estate not consumable in the use, was, by the terms of the said last will and testament of the said Matilda Todd, devised; bequeathed, and vested absolutely in fee simple in the defendant S. A. Todd; and a decree will be entered here adjudging that S. A. Todd, the devisee named in the will of Mrs. Matilda Todd, took only an estate for the term of his natural life in her real property and in her personalty not consumable in the use, and that the estate in remainder at the termination of said life estate of said S. A. Todd passed under the laws of descent and distribution to her heirs at law and distributees respectively. No complaint has been made here, by assignment of error or otherwise, of that part of the chancellor's decree fixing the amount of fees to be paid solicitors for complainant administrator and the guardian ad litem for the unknown heirs of Mahala Keaton, deceased, and directing that said fees be paid out of the estate of Matilda Todd, nor of that part of the decree adjudging that the cost of the cause below be paid by complainant administrator out of the estate of Matilda Todd; and in these respects the decree is affirmed. The costs of the appeal will be adjudged against S. A. Todd.

The cause will be remanded to the chancery court of Cannon county for further proceedings in conformity with the opinion and decree of this court.

Crownover and DeWitt, JJ., concur.