RUTH COBB MILLER

*v.*

WALTER WINFIELD MILLER, JR., and RICHARD C. MILLER.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

Cox, Epps, Powell & Weller, Johnson City, for appellant (complainant).

Simmonds, Bowman & Herndon, Johnson City, for appellees (defendants).

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant, Ruth Cobb Miller, filed her original bill in the Chancery Court at Johnson City seeking a construction of the will of her deceased husband, Walter Winfield Miller, Sr. The bill was filed against Walter Winfield Miller, Jr., and Richard C. Miller, co-executors and co-trustees under the will, the defendants being in disagreement with their mother as to their respective duties and obligations as trustees under the said will.

The pertinent part of the will appears in Items II and III, as follows:

"Item Two. After my funeral expenses and debts are paid, I hereby devise and bequeath the residue of my Estate of every kind, character, and nature, and wherever situated, to my wife, Ruth Cobb Miller, and my two sons, Walter Winfield Miller, Jr., and Richard

Cobb Miller, in trust, for the following uses and purposes:

"(1) To hold, manage, exchange, convert, sell, convey, lease, improve, invest and reinvest in such stocks, bonds, and other securities and properties as shall from time to time be approved by the majority of my Trustees. Said Trustees shall have the right to receive and accept all rents, dividends, issue and profits as of any kind or character flowing from my Estate, and their receipts therefor shall be binding upon my said Estate. The authority in my said Trustees to invest shall in no wise be confined to statutory investments, but they shall have full and unlimited discretion with reference to the type and character of investments they deem to be for the benefit of this trust estate. The voting power of all corporate stocks shall be executed by my Trustees as a majority may dictate and determine, and the fact that the Trustees, or either of them, are personally interested in said corporations or the voting of said stock, shall not be deemed to make them incompetent to vote as Trustees, but they shall be free to vote to the same extent as though wholly uninterested.

"My son, Richard Cobb Miller, is now in military service, away from Johnson City, Tennessee, and it is my desire, and I hereby vest authority in the other two Trustees to act in all matters pertaining to this trust, and in the execution of said trust without consultation with my son Richard on any of the matters pertaining to said Estate, and to execute any and all instruments necessary for the operation and carrying on of said Estate, without the signature of my son Richard, until

Richard can return to Johnson City and function and perform or to be performed by said two Trustees in the absence of my son Richard, and without consultation with him, shall be binding upon my Estate.

"(2) To pay taxes and other governmental charges and necessary insurance premiums, and *the* pay over the net income to themselves, individually, at such times and intervals as the majority of them may determine, in the following proportion: One-third (⅓) to my wife, Ruth Cobb Miller; one-third (⅓) to my son, Walter Winfield Miller, Jr., and one-third (⅓) to my son, Richard Miller.

"(3) If the income from my Estate, together with the income from the beneficiaries herein from other sources shall, for any reason—whether illness, or accident, or misfortune, or emergency of any kind—not be sufficient to support my wife, Ruth Cobb Miller, my sons, Walter Winfield Miller, Jr., and Richard Cobb Miller, or any one or more of them, I authorize and empower my Trustees, in the exercise of their sound discretion, if necessary, to use from time to time, enough of the *corpus* of my Estate for these purposes, to the end that my Estate may be of the most good to my wife and children. In the event it becomes necessary for any one of the beneficiaries to use more of the *corpus* than the other or others, the such amount used in excess of his or her pro rata part, according to the terms of this will, shall be charged against him or her in the division of the *corpus*.

"(4) The Trustees are hereby authorized and empowered, by a majority vote, to divide my Estate at any time they desire to do so, and in making the divi-

sion, the Trustees shall deliver and convey to my wife, Ruth Cobb Miller, one-third ($\frac{1}{3}$) of my entire estate; to my son Walter Winfield Miller, Jr., one-third ($\frac{1}{3}$) of my entire estate, and to my son, Richard Cobb Miller, one-third ($\frac{1}{3}$) of my entire estate, freed and discharged of the trust. In dividing said Estate, discharged of the trust, said division shall be share and share alike, without preference of one beneficiary herein over the other, and each type and character of asset shall be divided pro rata as nearly as may be practicable.

"Should the Trustees fail to divide my Estate, by a majority vote, within ten (10) years from the date of my death, then and in that event, it shall be mandatory upon the Trustees to divide said Estate in the way, manner and proportion herein set out.

"Item Three. I nominate and appoint my wife, Ruth Cobb Miller, my son, Walter Winfield Miller, Jr., and my son, Richard Cobb Miller, Co-Executors and Co-Trustees of this, my Will, and authorize them to sell and convey real or personal property, publicly or privately, for cash or on time, without any proceedings in or order of Court; to borrow money thereon by mortgage, trust deed, pledge or otherwise, for the benefit of my Estate, and in their capacity as Executors or Trustees, to continue any business in which I shall be engaged at the time of my death, for such time and in such way as shall seem best to them for the best interest of my Estate. Said Executors and Trustees are hereby expressly excused from giving bond, filing inventory or making reports to the County Court as in such cases, under the law, are made and provided.

"In the event of the death of one or more of the Trustees, the surviving Trustee shall continue to act. This trust estate and the Trustees shall be bound, regardless of statute or law to the contrary, to pay Government or State inheritance and estate taxes, or any other similar tax that may be imposed, and the beneficiaries under this will exonerated from the burden thereof."

The will was duly executed on the 5th day of February, 1944.

The testator later added a codicil to his will in which he pointed out that his son, Richard, was a resident of Washington, D. C., where he is employed and "that he will permanently reside out of the State of Tennessee", and hence his absence might interfere with the orderly administration of the estate. Under this codicil the complainant and her son, Walter Winfield Miller, Jr., are authorized to execute the trust "without consultation with my son Richard, so long as it is impracticable or impossible to do so on account of his absence" etc. However, in the execution of deeds to property or other instruments "which may be required in administering my estate" his signature thereto should be considered as necessary.

We have not copied the said codicil in full in this opinion because its contents are not important otherwise than to clearly indicate that it was the expressed wish of the testator that Richard was to share equally in the estate and should be consulted when necessary. This codicil bears date of April 3, 1951.

The bill charges that complainant and the defendants qualified as Co-Executors and Co-Trustees under the will

and that the will "is in full force and effect", and that complainant "as the widow of said decedent did not ever dissent in respect of his will and testament"; that complainant has demanded that the defendants give to her in severalty in fee simple her undivided one-third interest in and to the real and personal property so devised and bequeathed and that the defendants have refused to comply with this demand.

. It is further charged that complainant and the defendants differ widely in their interpretation of the trust, the former contending that under the terms of the trust there was a merger of the legal and equitable titles to one-third each of the whole estate when the will took effect, while the defendants insist that the property is held in a single trust for the benefit of each for a period of ten (10) years. The bill then prays for a declaration as to the validity of the trust.

The defendants demurred to the bill upon the following grounds:

"(1) The bill shows on its face that the suit is premature, because the executors have not yet finished their duties in settling the estate.

"(2) Because the object of the bill is in direct conflict with the clearly expressed intention of the testator.

"(3) Because there is repugnancy on the face of the bill. Complainant cannot attack the will and also claim under it.

"(4) The bill shows on its face that the complainant Ruth Cobb Miller elected not to dissent from the will

but to take under it and thereby waived any right to question the regularity of the will and is therefore now estopped to attack it.

"(5) Because the one year period under which the Complainant could dissent to the will has expired and she is now attempting to do by indirection what she can not do directly.

"(6) Because even though under the will of W. W. Miller deceased, the beneficiaries of the trust estate are also the trustees, the trust is not thereby rendered invalid or inoperative, and Complainant, individually, acquired no legal title in fee to an undivided one-third interest in the estate.

"(7) Because the will of W. W. Miller, deceased, clearly and distinctly creates one active trust, valid under the laws of the State of Tennessee, for the use, benefit and enjoyment of the three beneficiaries for a period of ten years unless a majority of the trustees should consent to a termination of the trust and distribution of the estate in a shorter period of time, and no trust either expressly or impliedly was created for the benefit of the Complainant individually.

"(8) Because the bill is an effort upon the part of one of the trustees to terminate the trust in violation of the express terms of the will and the trust."

While the demurrer seems to be argumentative of the merits of the issues, we do not consider it a speaking demurrer.

The Chancellor in an able and exhaustive opinion, filed with the record, sustained the demurrer and granted an appeal to this Court.

The appellant has filed three assignments of error. But it is conceded on the brief of complainant's counsel that when considered collectively only a single legal question is involved. This question is clearly stated in Assignment No. 3, and reads, as follows:

"The Chancellor erred in holding and adjudging that the vesting under the testator's will at his death in each the complainant and two defendants of both the legal title and equitable title to the fee simple and absolute ownership in and to the undivided third interest of and in the property devised and bequeathed thereby did not operate so as to vest at the testator's death in the complainant for her own use as tenant in common the full fee simple and absolute ownership in and to her one undivided third interest of and in the same property."

The following contention is made regarding this assignment:

"This was error because the vesting in a group of people as tenants in common of both the legal and equitable title to the fee simple and absolute ownership in and to undivided interest of and in property, in the same shares, both in the legal title and the equitable title, as a matter of law operates instantaneously to execute the supposed trust so as to vest in each of the group of people for his own use as tenants in common the full fee simple and absolute ownership in and to his undivided interest of and in the same property."

Counsel for both the appellant and the appellees have filed elaborate briefs, the former consisting of sixty-one (61) pages and the latter forty (40) pages, with exhaus-

tive citation of authorities in support of their respective contentions. They have been read and considered by the Court with increasing interest.

We will refer to the parties as they appeared in the Chancery Court, or in the will: Ruth Cobb Miller is complainant, and her two named sons as defendants, the three of them as Co-Executors and Co-Trustees under the will.

In order for us to sustain the contention of the complainant we are compelled to examine the will as a whole, and to find that upon the death of the testator, the trust sought to be created by Items II and III of the will became executed according to its express terms, in that the Trustees, each in his or her own right became "instantaneously" vested in fee simple with one-third of the entire estate both real and personal. The counsel for complainant insists that the authorities compel such a conclusion. On the contrary the defendants say that it is an active trust and it must be construed with due regard to the manifest intention of the testator.

We cannot undertake in this opinion a review of all the decisions cited by the counsel. Many of them are remotely relevant to the determinative issue before us and not controlling. The learned Chancellor held that the trust was an active trust and upon this issue we fully concur. The will shows upon its face, clearly and unmistakably, that the complainant and the defendants were appointed to act as Trustees *for themselves and for each other* to the end that their duties as such should continue until ten years after the testator's death, at which time it terminated.

260

■■ The property devised and bequeathed was the property of the testator and his intention is the controlling factor so long as it is not contrary to some positive rule of law, or of public policy, and is capable of being enforced. This is so fundamental in all cases that citation of authorities is wholly unnecessary. If the testator decided to tie up his property in trust for a period of ten years, this was his right without giving any reason for so doing. This was the ruling of the Chancellor, and we agree.

■ Contention was made before the Chancellor, and also this Court, that the will is invalid because it provides that it may be terminated by a majority vote of the Trustees. This is without merit since it is an active and subsisting trust. It certainly is not a "dry trust". The estate at the present time is being administered by the Trustees in accordance with the authority conferred and appears in the following language:

> "To hold, manage, exchange, convert, sell, convey, lease, improve, invest and reinvest in such stocks, bonds, and other securities and properties as shall from time to time be approved by the majority of my trustees."

Coming now to the problem of the immediate merger of the legal and equitable title in the three named Trustees, free from any limitations and conditions, the counsel for complainant relies upon the following cases, viz., *Green v. Young*, 163 Tenn. 16, 40 S.W.2d 793; *Williams v. Williams*, 167 Tenn. 26, 65 S.W.2d 561; *Templeton v. Strong*, 182 Tenn. 591, 188 S.W.2d 560; and *Johnson v. Johnson*, 92 Tenn. 559, 23 S.W. 114, 22 L.R.A. 179, in support of complainant's theory that she and her two

sons take their respective interests contrary to the conditions of the trust. In other words, they have acquired a fee simple estate, due to the alleged merger of both the legal and equitable.

The cases thus relied on, at least in part, have no application whatever as supporting authority for their position.

*Green v. Young,* supra, is authority only for the general rule that in construing a will a gift for life, without a gift over, passes the whole estate; also that the testator is presumed to dispose of his entire estate.

*Williams v. Williams,* supra, is to the same effect and has no application. The case of *Templeton v. Strong,* supra, holds: "It is a well-settled rule that conditions tending to destroy estates, such as conditions subsequent, are not favored in the law."

The foregoing decisions cannot be considered as authority for invalidating the trust, or its legal effect in disposing of the property of the decedent.

We are in complete disagreement with counsel that *Johnson v. Johnson,* supra, is authority for striking down the trust of the decedent, Walter W. Miller, Sr. The sum and substance of the Court's holding in *Johnson v. Johnson* is that the trust sought to be created by Johnson was void for indefiniteness. There is nothing in Mr. Miller's will that is illegal, contrary to established policy or otherwise, that renders it void. Nor are its purposes indefinite. The complainant's counsel sums up what he considers the testator's purposes, as follows:

"We do not mean to say that the so-called 'trust'

arrangement is illegal, but merely that it is effective, because it instantaneously affects itself. It is permissive as a devise for the devisees and legatees to administer their several properties acquired by the will, so long as they acquiesce in it; but, in our opinion, subject only to the wishes of each of the so-called beneficiaries."

We feel that the trust, when considered in its entirety, does not admit of any such interpretation.

■ ■ The complainants contend that the trust fails because there is a postponement of the vesting of the estate. We can find no merit in this argument for the reason that there was no postponement. The whole estate of the testator was vested in the Trustees immediately upon the taking effect of the will and their acceptance of appointment as Co-Executors and Co-Trustees. Conceding, but not deciding, that there was a postponement of vesting in the individual members, it was permissible as a matter of law so long as not in violation of the rule that an estate must vest within a life, or lives, in being and twenty-one and a fraction years thereafter. This rule was not violated. In the present case there was a postponement of a *division* of the trust property. As said in *Harris v. France,* 33 Tenn.App. 333, 352, 353, 232 S.W.2d 64, 72: "it was not the vesting of the estate in the beneficiaries which the testator desired".

■ ■ The learned counsel for the complainant has urged upon us certain technical rules of construction as justifying the invalidation of the trust. But these technical rules cannot, and should not, be invoked by a court of equity when, to do so, would result in defeating the

intention of the testator. It must be kept in mind that this is an active trust, clearly so, and it is a settled rule that a court of equity is in duty bound to preserve an active trust to give effect to the donor's right to dominion over his property. Phillips' Pritchard on Wills, Section 167. In *Winters v. March,* 139 Tenn. 496, 504, 202 S.W. 73, 75, the Court quotes with approval the following as a settled rule of law:

" 'If any trust or duty is imposed on the trustee, either expressly or by implication, the trust is an active one, and in such case there is no merger of the legal and equitable estates'—citing *Henderson v. Hill,* 77 Tenn., 9 Lea, 25, and *Jourolmon v. Massengill,* 86 Tenn. 93, 5 S.W. 719.

"The doctrine of merger will not apply where it defeats the intention of the grantor or testator. Perry on Trusts, sec. 347; 10 R.C.L., 667, 40 Cyc., 1813.''

To the same effect, see *Tramell v. Tramell,* 162 Tenn. 1, 32 S.W.2d 1025, 35 S.W. 2d 574.

The final question for our consideration is whether or not a trust may be valid where the Trustees and the *cestui que trust* are the same persons.

We find a somewhat diversity of opinion on this question. The older cases seem to hold that where the testator or grantor names only one Trustee and he is a beneficiary of both the income and the corpus of the trust property, the trust is void. In *Greene v. Greene,* 1891, 125 N.Y. 506, 26 N.E. 739, 21 Am.St.Rep. 743, the rule was held to apply where there are multiple Trustees who hold property for themselves to receive the income therefrom for a specified time and at the end take the

same as individuals. The Chancellor in the present case considered these authorities and held that this technical rule did not apply to the present controversy.

 The Chancellor applied what he considered the modern rule against a merger and sustained the trust as valid. We agree that it is the better rule. By numerous authorities it is held "that the sole beneficiary of a trust cannot be the sole trustee of it". 54 Am.Jur., page 101. This statement cannot be controverted as being the general rule. In the same authority, however, it is stated on page 102:

"According to the better view, which is also supported in a slight majority of the jurisdictions, an intended trust is validly created although the trust instrument names the same persons both trustees and beneficiaries. * * *. There is no such merger of the legal and equitable interest as will render the trust invalid, where no one of the trustees is free to deal alone with his own equitable interest, any action taken by the trustees must be unanimous, and complete authority passes to the surviving trustees in case of the death of any trustee."

See also Restatement of the Law on Trusts, Section 341.

 In the case at bar there can be no diversion or distribution of the trust property except by a majority of the Trustees.

We have an interesting discussion of this question in *Blades v. Norfolk Southern R. Co.*, 224 N.C. 32, 29, S.E. 2d 148, 151 A.L.R. 1278, wherein the Supreme Court of

North Carolina follows the modern rule as set out in Am. Jur., supra.

The will in instant case was evidently prepared under the advice of a capable lawyer and discloses not only the clear intention of the testator but was executed with due regard to his obligations to his family. He left what is conceded to be a large estate and was interested in its preservation for an appreciable length of time. His unmistakable view, as disclosed in the will, was that it was for the best interest of his wife and sons that they act as a unit in managing the estate, all three enjoying its benefits equally for ten years, after which time each one would come into the exclusive possession of his and her share of the property.

It is not unreasonable to suppose that the testator felt that Mrs. Miller, due to lack of any business experience, was not altogether capable of managing her individual share, and would need the advice and cooperation of her sons in this regard. For reasons, satisfactory to themselves, Walter Winfield Miller, Jr., and Richard C. Miller have shown an active interest in preserving the integrity of the trust.

We respect the good faith and zeal of counsel for Mrs. Miller in filing the original bill in this cause seeking a declaration as to the validity of the trust. But we feel that the weight of authority sustains the Chancellor's decree, and it is accordingly affirmed.