McDonald v. Ledford.

McDonald *v.* J. H. Ledford *et al.*

(*Nashville.* December Term, 1917.)

1. **WILLS.** Construction. Partial intestacy. Presumption. Applicability.

The presumption against partial intestacy, codified by Thompson's-Shannon's Code, section 3927. is applicable when the words used, by any fair interpretation, will embrace the property not otherwise devised, unless a contrary intention appears from the context. (*Post, pp.* 474,475.)

Case cited and approved: Oldham v. York, 99 Tenn., 68.

Code cited and construed: Sec. 3927 (T.-S.).

2. **WILLS.** Construction. Words in preamble.

In determining testator's intention, to be ascertained from the whole will, words of the preamble may be considered. (*Post, pp.* 475-477.)

Cases cited and approved: Lyon v. Safety Dep. & Trust Co., 120 Md., 514; Putnam v. Robertson, 205 S. W., 309.

3. **WILLS.** Rule of construction. Disinheritance.

It is a rule of construction that an heir is not to be disinherited except by express words or necessary implication. (*Post, pp.* 477-480.)

4. **WILLS.** Rules of construction. Conflict. Intestacy and disinheritance.

The rule of construction that an heir is not to be disinherited except by express words or necessary implication prevails, in case of conflict, over the rule that testator is presumed to have intended not to die partially intestate. (*Post, pp.* 477-480).

5. **WILLS.** Construction. Disinheritance. Ambiguity.

There being at least ambiguity in the words referring to the property from which testatrix intended to exclude an heir, the heir should not be disinherited further than is clearly declared, and any doubt should be resolved in her favor. (*Post, pp.* 477-480.)

McDonald v. Ledford.

Cases cited and approved: Bradford v. Leake, 124 Tenn., 312;
Bradford v. Bradford, 6 Whart. (Pa.), 244; Fox v. Fox, 102
Tenn., 77; Ridley v. Coleman, 33 Tenn., 616; Shaner v. Wilson,
207 Pa., 550; Watson v. Martin, 228 Pa., 248.

Cases cited and distinguished: Rupp v. Eberly, 79 Pa., 141; Wilk-
ins v. Allen, 18 How., 385; Doe v. Halloway, 2 Houst. (Del.),
527.

6. **WILLS.**   Construction.   Rejecting words.

Disregarding, in will made before testatrix inherited most of
her property, words of preamble stating desire to dispose of
estate "accumulated by . . . toil of myself with . . . hus-
band," substantially repeated in clause giving "all" her property
to son, and stating daughter had received of property so ac-
cumulated all testatrix desired, would violate rule against re-
jecting any which may reasonable be given effect. (*Post, p.*
480.)

Case cited and approved: Evens v. Griscom, 42 N. J. Law, 579.

———————

FROM OVERTON.

———————

Appeal from the Chancery Court of Overton
County.—Hon. C. E. SNODGRASS, Chancellor.

E. D. WHITE, for appellant.

M. M. ROBERTS, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

The bill of complaint was filed to have the will of
Elizabeth Ledford construed, the contest being one

between Sarah McDonald, a daughter of the testatrix, and J. H. Ledford, her son, and the wife of the latter.

The will, so far as it needs to be quoted to set forth the contentions of the parties litigant, is as follows:

"I, Elizabeth Ledford, of Overton county, Tennessee, . . . being desirous of disposing of my worldly estate accumulated by years of honest toil of myself with the assistance of my deceased husband, William Ledford, do make and publish this, my last will and testament, hereby revoking and making void all other will heretofore at any time made by me."

The first clause provides for burial expenses and the erection of a tombstone.

The second clause provides. for the payment of debts.

"Third. I give and bequeath all of my property of every kind and character, both real and personal, to my son, John H. Ledford, and his wife, S. J. Ledford. . . . My daughter, Sarah McDonald, has received all of the property accumulated by myself and husband that I desire her to have. Neither do I want her children to receive anything further from my estate. My said son and wife have cared for me in my old age and sorrow, and I direct that they be compensated for so doing."

The fourth and last clause names an executor, who is instructed to see that every part and parcel of the will is carried out.

The complainant, Sarah McDonald, the daughter of testatrix, does not contend that the Ledfords do not take as devisees and legatees all the estate accumulated by the toil of testatrix and her husband. The litigation grows out of the fact that after the will was executed in 1902, and before the death of testatrix, at the age of eighty-eight years, in 1916, or about five or six years before the latter event, a nephew and a sister of Elizabeth Ledford died leaving her their estates, which in value aggregate about $18,000.

The estate of testatrix, excluding the two estates so inherited, amounted to approximately $4,600, and as stated, it is conceded that the Ledfords are entitled to this under the will.

For complainant it is insisted that the testatrix intended to make testamentary disposition of the estate she had herself acquired from a certain source —accumulations from the toil of herself and her husband—and that the words "all my property" should be read "all my property thus acquired." Under this contention the after-acquired estates, from the nephew and sister, would not be deemed disposed of by the will.

The defendants rely upon Thompson's Shannon's Code, section 3927, which provides that a will shall be construed to speak and take effect as if it had been executed immediately before the death of testator, and shall convey all the estate belonging to him, unless a contrary intention appear by its words and context.

By this statute there was codified the common-law presumption that a testator intends to dispose of all his estate, and not to die intestate as to any of his property, which presumption is applicable when the words used, by any fair interpretation, will embrace the property not otherwise devised, unless a contrary intention appears from the context. *Oldham* v. *York,* 99 Tenn., 68, 41 S. W., 333.

The court of civil appeals apparently held the view that it could not look for aid in construction to the language of the introductory clause or preamble of the will, which complainant insists tends to identify the estate being disposed of as that estate accumulated by the testatrix and her husband, or which might be accumulated by the toil of testatrix.

While this expression of purpose in the introductory clause does not of itself dispose of any property, it may be resorted to and found useful in resolving doubts as to the meaning of particular dispositive clauses of the will. *Lyon* v. *Safety Dep. & Trust Co.,* 120 Md., 514, 87 Atl., 1089; 1 Underhill on Wills, 617.

The introductory clause of a will, though formal and nondispositive in character, is not for that reason to be disregarded in construing a will. The rule is that the testator's intention is to be ascertained from the whole will. If therefore the testator in the preamble expresses an intention of disposing of all his estate, as when he says, ''I give and dispose of all my worldly goods,'' it should be considered. On the other hand, it is competent for a testator, in the preamble

or in the disposing clauses, to define and limit the estate to be disposed of to less than the whole of that of which he may die possessed. This may be done by direct or contextual words limiting the devise, such as "my property devised to me," or by words descriptive of the property by its source or mode of acquisition or by its tenure. 2 Jarman on Wills, 396–398; 1 Underhill on Wills, 401; 40 Cyc., 1554; *Oldham* v. *York,* supra.

The question confronting us is whether there appear in the will contextual words which modify the words "all my property of every character," in the third clause.

Not only in the preamble do we find the words describing the estate as that accumulated by the labor of the testatrix. In the third clause, complainant Sarah McDonald, is to an extent disinherited, in the sense of being left nothing by her mother, because she "has received all of the property accumulated by myself and husband that I desire her to have." In other words, because of the proportion which advancements that had been made to Sarah sustained to a particular estate, pointed out as the one so accumulated, it was thought that Sarah should be satisfied and take nothing further therefrom. May it be fairly argued that if Sarah had previously received one-half of that estate, aggregating $4,600, she must be disappointed in respect of sharing in the $18,000 after-acquired estates, no part of which she had received, when testatrix was excluding her on the score of what she

had received, and measured it by the standard of the "property accumulated by myself and husband"? When the standard and proportion is seen to have changed by reason of such acquisitions, shall Sarah pass out of the reckoning?

As stated, the rule of construction chiefly invoked by defendant in the present case is that a testator is to be presumed to intend not to die partially intestate. A sound application of this rule has been made by this court in an opinion handed down by the Chief Justice to-day. *Putnam* v. *Robertson,* 205 S. W., 309.

But another rule of construction is that the heir is not to be disinherited except by express words or necessary implication. Thus, in *Rupp* v. *Eberly,* 79 Pa., 141, it was said:

"The maxim is imbedded in the common law that an heir can be disinherited only by express devise, or by necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed. 1 Jarman on Wills, 465."

See *Bradford* v. *Leake,* 124 Tenn., 312, 137 S. W., 96, Ann. Cas., 1912D, 1140.

In *Wilkins* v. *Allen,* 18 How., 385, 15 L. Ed., 396, it was said:

"In speaking of expressions in a will necessary to disinherit the heir, Chief Justice GIBSON, in delivering the opinion of the court in the case of *Bradford* v. *Bradford,* 6 Whart. (Pa.), 244, says: 'The intention must be manifest, and rest on something more certain

than conjecture. The court must proceed on known principles and established rules, not on loose conjectural interpretations, nor considering what a man may be imagined to do in the testator's circumstances. The principle is applicable in all its force in a case like the present, in which the question goes to the birthright of those who, standing in place of the common-law heir, are not to be disinherited except by express devise, or, as is said in 1 Powell on Devises, 199, by implication so inevitable that an intention to the contrary cannot be supposed.' ''

In *Doe* v. *Halloway,* 2 Houst. (Del.), 527, the court said:

''Heirs at law are not to be disinherited, or debarred of their right to claim his lands by operation of law, or by descent and inheritance, as it is usually termed, without express words, or a clear and certain intent apparent upon the face of the will. For in order to make such a devise of real estate as will disinherit an heir at law, or deprive him of his right to inherit it, independent of the will, such an intention must appear, or be clearly indicated in it, as is sufficient to satisfy the mind and conscience of the court in pronouncing it such. If it is barely problematical, or is doubtful, or uncertain, the rule of law must have its course and control the disposition of the estate, notwithstanding the provisions of the will.''

It was said by this court in *Fox* v. *Fox,* 102 Tenn., 77, 92, 50 S. W., 765, that it is a well-established rule in the construction of wills that the law favors the heir,

and there should be an intent manifest in the will to depart from that equality which is provided for in the statutes of descent and distribution.

In *Ridley* v. *Coleman,* 1 Sneed (33 Tenn.), 616, 620, Judge CARUTHERS said that under our laws, where the distribution of property is so equal and just, there is no necessity for overstraining facts and rules to avoid intestacy.

We cannot hold that the rule that a testator is presumed to have intended not to die intestate as to any part of his estate is of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication. Indeed, we are of opinion and hold that the latter rule should be the paramount one in case the two come in conflict, since it is less fictional or metaphysical and is based upon what we know to be the natural prompting of the parental heart: To recognize and not disregard one's own offspring in the last testamentary disposition of his estate. *Shaner* v. *Wilson,* 207 Pa., 550, 56 Atl., 1086; *Watson* v. *Martin,* 228 Pa., 248, 77 Atl., 450, 20 Ann., Cas., 1288. In the solemn act of formulating the provisions of such an instrument, the mind of the average testator must turn to a contemplation of the Great Parent; and, even as there is a craving not to be disowned by Him, such an one is not to be deemed to be inclined towards the disinheriting of those whom he has brought into this world; and who therefore are the natural recipients of his bounty.

When, therefore, to say the least, there is ambiguity in the words which refer to the property from which testatrix intended to exclude Sarah McDonald, we hold that she as heir should not be disinherited further than is clearly declared, and that any doubt should be resolved in her favor.

Furthermore, the argument in behalf of the defendants would require us to treat as false demonstration or description the words "accumulated by years of honest toil," though they were in substance twice used by the testatrix. If left in the will there is an entire, definite thing dealt with, "all" of which the testatrix gave. From Lord Coke's day (Goodall's Case, 5 Rep., 97) the rule has been that no word will be rejected if it may reasonably be given effect. The court should hesitate to thrust out of a will any part of the language of the testatrix.

To justify the suppression of a single descriptive term, that term must plainly be out of harmony with the other parts of the demonstration, after putting a reasonable construction upon the entire descriptive context, and "the judicial leaning should be to the retention of every word." *Evens v. Griscom,* 42 N. J. Law, 579, 36 Am. Rep., 542; 40 Cyc., 1402.

Not being satisfied with the result reached by that court, we direct a reversal of the decree of the court of civil appeals, with remand of the cause to the chancery court for further proceedings, not inconsistent with the above rulings.