## BROOKING et al. v. McCUTCHEN et al.

### No. 12962.

Court of Civil Appeals of Texas. Dallas.

Dec. 9, 1939.

Guthrie & Guthrie, of Dallas, and Dwight Roberts, of Kansas City, Mo., for appellants.

J. J. Fagan, of Dallas, for appellees.

BOND, Chief Justice.

This suit was brought by Lyllyan Sheegog Brooking, joined by her husband, J. H. Brooking, to construe the will of her father, Robert W. Sheegog, deceased. C. W. McCutchen, sole executor, and all other beneficiaries of the will and estate were made parties defendant. The will is, as follows:

"January 10, 1939
"To Whom This May Concern:

"This is my only will and testament. My belongings I wish disposed at my death as follows:

"The printing plant and all equipment, together with all outstanding accounts, to go to my brother, Cecil W. McCutchen.

"All cash in bank, all stocks and notes, together with my home, at 7106 Lakewood Boulevard, is to be converted into cash and divided as follows:

"One-half of all net proceeds is to be divided as follows: One-half shall go to my daughter, Lillian Sheegog Brooking, the remaining half shall be divided equally between my sister, Fannie Fulton, Lula Blackwell, and Lynden McCutchen.

"My faithful employee, J. F. Ponder, is to remain with the firm, The Sheegog Printing Company, so long as he is physically able to do so. When he is no longer able to work, he is to be paid twenty dollars ($20.00) per week from the income of the Sheegog Printing Company, so long as he lives.

"Of course, all this is to be done after my indebtedness and my funeral expenses have been paid.

"I hereby appoint my brother, C. W. McCutchen, sole executor without bond.

(Signed) Robert W. Sheegog
"Witness:
"Victor S. Patton
"Leo H. Pratley"

Appellants take the position that, the will disposes of only one-half of the net proceeds of all cash in bank, stocks and notes, and the home at 7106 Lakewood Boulevard, converted into cash, by a division of one-half thereof to his daughter, Lyllyan Sheegog Brooking, and the other one-half divided equally between the two sisters of the deceased, Fannie Fulton and Lula Blackwell, and a brother, Lynden McCutchen; that such bequests, together with the devise to Cecil W. McCutchen, are subject to all indebtedness and funeral expenses of deceased; and that deceased died intestate, as to the remaining half of the cash, stocks and notes, and the home, converted into cash, which, under the law of descent and distribution, Art. 2570, 1925, Mrs. Brooking, his only child, inherited. The trial court took an adverse view, charging, however, each of the beneficiaries, in proportion to the share of each, with all outstanding indebtedness and funeral expenses of the deceased; thus, in effect, interpreting the will as dividing the whole of the net cash in bank, stocks and notes, and the home,—one-half to his daughter and the remaining half to his two sisters and a brother, and accordingly entered judgment. The holding of the court finds support only in strong presumptions, which are mere rules of evidence, tending

to the proper interpretation of the acts of the deceased expressed in his will.

 The will is so drawn as not to admit parol evidence, and, as a consequence, the intention of the testator must be found in the language he employed in the will. All presumptions must yield to the clear intent of the testator expressed in the will. "Where the language of the will is plain and unambiguous, the court cannot give it a meaning different from that warranted by its words merely for the purpose of carrying into effect a conjecture or hypothesis as to the testator's intention by changing such language. 40 Cyc. 1399". McMullen et al. v. Sims et al. Tex.Com.App., 37 S.W.2d 141. Indeed, the deceased, in merely executing the will, evidenced a desire to dispose of his belongings at his death; and too, only in the manner stated by him. Obviously, he wished to give to his sisters and brothers some of his belongings, which they would not receive, but for the will, and to deprive his child of only such portion of his estate as he desired to give to the others. Ordinarily, a strong presumption exists that the testator did not intend to die intestate as to any part of his estate, by the execution of the instrument, but such presumption must necessarily yield to the otherwise clear language of his will. It cannot be presumed that the testator intended to disinherit his only child, in whole or in part, of his estate. This latter rule is paramount to all other presumptive canons. In McDonald v. Ledford, 140 Tenn. 471, 205 S.W. 312, 314, the Supreme Court of Tennessee said:

"We cannot hold that the rule that a testator is presumed to have intended not to die intestate as to any part of his estate is of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication. Indeed, we are of opinion and hold that the latter rule should be the paramount one in case the two come in conflict, since it is less fictional or metaphysical and is based upon what we know to be the natural prompting of the parental heart: To recognize and not disregard one's own offspring in the last testamentary disposition of his estate. Shaner v. Wilson, 207 Pa. 550, 56 A. 1086; Watson v. Martin, 228 Pa. 248, 77 A. 450, 20 Ann.Cas. 1288."

In this connection, in 44 Tex.Jur., p. 814, § 243, the general expression of the law of this state follows the expression of the Supreme Court of Tennessee, supra, in the following language: "One may be morally bound not to disappoint the expectations of heirs and next of kin, and, as was early said by the Supreme Court, it may be questioned, perhaps, whether the Legislature ought not to place a general restriction upon the power of testamentary disposition."

██ So, we think, where the testator says, "all cash in bank, all stocks and notes, together with my home, at 7106 Lakewood Boulevard, is to be converted into cash and divided as follows: One-half of all net proceeds is to be divided as follows: One-half shall go to my daughter, Lillian Sheegog Brooking, the remaining half shall be divided equally between my sister, Fannie Fulton, Lula Blackwell, and Lynden McCutchen", clearly deals only with one-half of the named property, making testamentary of that half and leaving the other half intestacy. It is evident, the deceased had in mind when he drafted the will, to divide the property into two moieties making disposition of two halves. In pronouncing the division, he used this language, after designating the property to be divided: " * * is to be converted into cash and divided as follows:", saying of this half, "One-half shall go to my daughter, Lillian Sheegog Brooking, the remaining half shall be divided equally between my sister, Fannie Fulton, Lula Blackwell, and Lynden McCutchen"; thus clearly leaving the other half of the property undisposed of by the will. We may visualize what the deceased intended when he failed to make disposition of the other half,— either he failed to complete the disposition of the remainder of his property, or else intended that his only child should receive it under the law of descent. Since deceased failed to complete disposition of his property, whatever may have been his reasons for such failure, the language used in the instrument governs over all rules of presumption, even though it results in what we might consider absurd consequences. The division of one-half of all net proceeds of the estate implies that, one-half only is to be divided: One-half of the one-half, or one-fourth, to Lillian Sheegog Brooking, and one-half of the other one-half, or other one-fourth, is to be divided equally between Fannie Fulton, Lula Blackwell, and Lynden McCutchen; and that the testator died intestate as to the remaining one-half of the net proceeds of his estate,

200

other than the devise to his brother, Cecil W. McCutchen. Then, too, the testator having said in the will, following all the bequests to beneficiaries, "Of course, all this (meaning all the foregoing bequests) is to be done after my indebtedness and my funeral expenses have been paid", each beneficiary under the will is encumbered, in proportion to the value of the share received by each, with such indebtedness and expense.

In our opinion, the will bears no other construction than that, the testator died testate as to one-half of the property, designated to be divided among his daughter, two sisters, and a brother, Lynden McCutchen; and intestate as to the other half, and that the share of each of the beneficiaries under the will shall bear the testator's indebtedness and funeral expenses in proportion to the value of such shares. Accordingly, the judgment of the court below is affirmed in part; reversed and rendered in part.